**Michael F. WALSH, Regional Director, National Labor Relations Board, Petitioner,**

v.

**HOTEL, RESTAURANT, INSTITUTIONAL EMPLOYEES AND BARTENDERS UNION, LOCAL 26, AFL–CIO, Respondent.**

**Civ. A. No. 87–0919–Z.**

United States District Court, D. Massachusetts.

April 16, 1987.

Carol A. Sax, Robert A. Pulcini, Atty., N.L.R.B., Boston, Mass., for petitioner.

Charles I. Cohen, Vedder, Price, Kaufman, Kammholz & Day, Washington, D.C., Joseph F. Ryan, Lyne, Woodworth & Evarts, Boston, Mass., for Hancock Mutual Life.

Robert Emmet Dinsmore, Quincy, Mass., for respondent.

## MEMORANDUM AND ORDER

SKINNER, District Judge.

This petition for an injunction brought on behalf of the National Labor Relations Board ("NLRB") arises out of the efforts of the defendant union (hereinafter "Local 26") to organize the employees of the Back Bay Hilton, a hotel located in Boston ("the Hotel"). The Hotel is owned by the John Hancock Mutual Insurance Company ("Hancock") and operated under a management contract by a separate corporation called Hotels of Distinction ("Distinction"), which is not owned by Hancock and which does not share directors or officers with Hancock. Local 26 has directed much of its organizing campaign against Hancock and attempted to have union members (who were also Hancock policyholders) enter the policyholders' meeting of February 9, 1987 carrying signs dramatizing the conflict between the Local, Distinction and Hancock.

More recently, the Local has distributed literature and made statements to representatives of the news media that members of the Local would "disrupt" the running of the Boston Marathon on April 20, 1987. The principal sponsor of the Marathon is

Hancock, which expects through world-wide coverage of the event to garner favorable publicity for itself. The Marathon is organized and controlled by the Boston Athletic Association ("BAA"), a separate corporation. Under agreement with the BAA, Hancock provides prize money and money for certain other expenses in return for being recognized as the community sponsor of the Marathon.

Hancock has filed a complaint with the NLRB charging that the Local is engaged in unfair labor practices, i.e., secondary picketing and alleged harassment of Hancock by the Local. The NLRB seeks an injunction in aid of its jurisdiction to maintain the status quo.

It is important to recognize the limited role of this court in these proceedings. Primary jurisdiction is in the NLRB to determine if an unfair labor practice has occurred. Appellate jurisdiction is exclusively in the court of appeals, by direct appeal from the NLRB. The district court's sole role is to determine if the NLRB has reasonable cause to believe that an unfair labor practice has occurred or is about to occur, and to determine what form of injunctive relief is appropriate in aid of the NLRB's jurisdiction. It is apparent also that the present state of affairs implicates a range of rights and liabilities under state law which are not preempted by federal labor laws. Nothing that I say or do in this case is intended to deal with these rights and liabilities or to impinge upon their enforcement in state court proceedings which I understand to be ongoing.

It is stipulated that Local 26 is a labor organization and that Distinction, Hancock and the BAA are engaged in commerce, within the meaning of § 8(b)(4)(i)(ii)(B) of the National Labor Relations Act, 29 U.S.C. § 158(b)(4)(i)(ii)(B), the relevant statute. The authority of the district court is delineated in 10(*l*) of the Act, 29 U.S.C. § 160(*l*).

1. *Neutrality of Hancock*

■ The first question is whether the NLRB had reasonable cause to believe that Hancock is a neutral employer, protected from coercion, or is directly or indirectly the employer of the employees whom the Local seeks to organize. This issue is governed by the management contract between Hancock and Distinction, in the absence of any evidence that the management contract does not describe the actual relationship between the parties.

Article II of the management contract provides that the "discretion and control" granted to Distinction "shall include, determination of labor policies except as stated in Article XXV (including the hiring and discharge of all employees and entering into a contract or contracts with an applicable union or unions in Owner's name)." Article III of the management contract provides in part that "[e]ach Hotel employee shall be the employee of [Distinction]." Distinction may delegate to certain persons in its employ "the responsibility of employing, paying, supervising and discharging Hotel employees."

While these provisions seem clearly to exclude Hancock from any role as employer of Hotel employees, there are countervailing considerations. All expenses of the Hotel, including salaries and wages, are passed through directly to Hancock. Article XXV of the management contract, referred to above in the quotation from Article II, provides that upon termination, Hancock will assume Distinction's rights and liabilities under any collective bargaining agreement and provides that Hancock shall have "the right to participate in the negotiation of any contracts after the commencement date of this Agreement."

The Local also points to a provision of Article II which requires Hancock's approval of any contract which requires an annual aggregate expenditure in excess of $25,000.

Despite these provisions, initial and continuing responsibility for employment and for labor policies remains with Distinction. If Distinction elects to enter into a collective bargaining agreement, Hancock would have the right to participate in the negotiation of the agreement or to veto the agreement. It has no legal power to initiate collective bargaining or to require Distinction to initiate collective bargaining. If

Hancock were to use its economic power to coerce Distinction to initiate collective bargaining, as the Local apparently wants it to, it might well itself be in violation of § 8(b)(4)(i)(ii)(B) of the Act. It does not appear that Distinction has initiated any action that would trigger Hancock's participation in the employment process. It is the uncontradicted testimony that Hancock has not in fact participated in the employment process at the Hotel or under a similar contract with Distinction governing the Copley Plaza Hotel.

I conclude on the basis of the foregoing that the NLRB had reasonable cause to believe that Hancock is a neutral employer entitled to protection under § 8(b)(4)(i)(ii)(B).

## II. *Neutrality of the BAA*

There is no basis whatever for treating the BAA as an employer in this situation. The NLRB not only had good cause to believe that the BAA is neutral; such a conclusion is inescapable.

## III. *Existence of an unfair labor practice*

■ The appearance of Local members at the February 9th meeting of Hancock policyholders is alleged by the NLRB to be secondary picketing in violation of the Act. The Local characterizes its action as participatory corporate democracy. I viewed a silent video tape of the event. The dread specter of ambiguity hovers over the scene. Nevertheless, the activity partook of enough of the characteristics of picketing to warrant a conclusion that the NLRB had reason to believe that a violation of § 8(b)(4)(i)(ii)(B) occurred.

## IV. *Need for an injunction*

■ The statute calls for the court to grant such injunctive relief as is "just and proper." In § 10(*l*) cases such as this, the usually stringent requirements for the issuance of preliminary injunction, *Planned Parenthood League of Massachusetts v. Bellotti*, 641 F.2d 1006, 1009 (1st Cir.1981), are relaxed in favor of the charging party, as represented by the NLRB. *Maram v.*

*Universidad Interamericana*, 722 F.2d 953 (1st Cir.1983). Plaintiff has exhibited a likelihood of success on the merits. Despite the presumption of irreparable harm and vindication of the public interest, it is necessary to consider what threatened acts of the defendant are likely to cause irreparable injury, if any, and the defendants' countervailing right under the First Amendment to the United States Constitution to free speech, and in particular to freedom from prior censorship of speech.

The Local and its president, Domenic Bozzotto, have made veiled threats of action involving the Marathon aimed at Hancock. An advertisement published by the Local asked local citizens to "Accept Our Apologies For Any Disruption on April 20th." Bozzotto stated on local television that no action would be too outrageous if necessary to accomplish the Local's purpose. Bozzotto on the stand was uncommunicative, not to say downright evasive, as to what plans the Local is considering with reference to the Marathon. I find, however, that enough has been said by Bozzotto and his associates to warrant the conclusion that there has been a sufficient threat of illegal action to require injunctive relief. A distinction must be made between illegal conduct and acts which are not only illegal but criminal. Traditionally, a court exercising its equitable jurisdiction will not enjoin criminal conduct.

Bozzotto's failure to specify what action he contemplates while at the same time refusing to exclude the possibility of illegal conduct presents a difficult problem in the formulation of an appropriate decree. A broad decree cast in the terms of the statute or prohibiting illegal activity generally, as suggested by NLRB counsel, is unacceptable. A party should not be subject to the sanctions of contempt without being specifically advised as to what action is prohibited, and by inference, what is permitted.

It is necessary in this situation to try to project likely scenarios of action by the Local and as clearly as possible delineate those which will make the Local and its members the subject of sanctions.

It is clear that the Local may picket the Hotel. It may not picket other property of Hancock with signs that refer to its dispute concerning the Hotel. It may picket Hancock property with signs that refer to its dispute with Hancock itself concerning the food service workers in the Hancock Tower.

It may not picket the route of the Marathon, or obstruct or interfere in any way with the running of the Marathon. It may not interfere with attendance at the Marathon either by physical coercion or by public statements likely to cause members of the public to avoid the Marathon route for fear of violence or disruption.

The First Amendment does not protect picketing, which is in some form coercive action as well as speech, and does not depend for its effect solely on the persuasive power of speech. *NLRB v. Retail Store Employees*, 447 U.S. 607, 616, 100 S.Ct. 2372, 2378, 65 L.Ed.2d 377 (1980) (see also Stevens, J., concurring at 618–19, 100 S.Ct. at 2379–80). The First Amendment does protect purely informative signs, pamphlets, handbills and the like which describes the existence of a labor dispute, so long as the publication of these matters is not attended by action designed to restrain or coerce the action of others.

Accordingly, I order the entry of a preliminary injunction in the form filed herewith.